Richard C. Boardman, Bar No. 2922
rboardman@perkinscoie.com
Christine M. Salmi, Bar No. 5626
csalmi@perkinscoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, ID 83702-5391
Telephone: 208.343.3434
Facsimile: 208.343.3232

*Attorneys for Defendants*
*The McGraw-Hill Companies, Inc. and*
*Standard & Poor's Financial Services LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STATE OF IDAHO, through ATTORNEY GENERAL LAWRENCE WASDEN,<br><br>Plaintiff,<br><br>v.<br><br>THE MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC,<br><br>Defendants. | Case No. _____<br><br>**NOTICE OF REMOVAL**<br><br>**(Removed from the District Court of the Fourth Judicial District of Idaho, Ada County, Case No. CV OC 1302154)** |

Defendants, The McGraw-Hill Companies, Inc. ("McGraw-Hill") and Standard & Poor's

Financial Services LLC ("S&P") (collectively, the "Removing Defendants"), by and through

their counsel, Perkins Coie, LLP, hereby remove to this Court the above-referenced state court

action, which is described in more detail in Paragraph 16 below.  This Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1331, and the claims may be removed to this Court under 28

U.S.C. §§ 1441 and 1446.  The grounds for removal are set forth below.[1]

## NATURE OF THE FEDERAL QUESTIONS PRESENTED

1.      This action is removable under 28 U.S.C. § 1441(a), which allows removal of any

action over which federal district courts have original jurisdiction.

2.      This Court has original jurisdiction over this action because it arises "under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  The claims that Plaintiff

seeks to assert "necessarily raise a stated federal issue, actually disputed and substantial, which a

federal court may entertain without disturbing any congressionally approved balance of federal

and state judicial responsibilities." *Grable & Sons Metal Prod., Inc.* v. *Darue Eng'g & Mfg.*,

545 U.S. 308, 314 (2005); *see also Gunn* v. *Minton*, No. 11-1118, 2013 WL 610193, at *6 (U.S.

Feb. 20, 2013) (reaffirming *Grable* standard).  In particular, as discussed in more detail below,

the claims that Plaintiff seeks to assert, together with a wave of parallel cases, (i) threaten to

disrupt and supplant a complex and exclusive federal regulatory scheme enacted by Congress

and (ii) require the evaluation and adjudication of the scope and nature of that scheme in order to

determine whether the relief sought by the State is available to it and consistent with the United

States Constitution.

---

[1]      The Removing Defendants specially appear for the purposes of removal only and for no
other purpose, and they reserve all defenses, whether jurisdictional or otherwise, available to
them.

3.      This action is one of nearly twenty cases in which a nationwide group of

Attorneys General of various states and the District of Columbia acting in concert has brought

suit against Defendants for alleged violations of state consumer protection and unfair trade

practices laws (the "State Actions"). *See* Appendix 1 (compiling complaints).  Generally

speaking, the actions – rooted in a consumer protection / unfair trade practices theory – allege

the same basic theory: that S&P yielded to pressure from issuers of securities to assign higher

credit ratings than it otherwise would have, thereby rendering "false" various statements S&P

has made over the years about the independence of its credit ratings process.  That ratings

process and the potential for conflicts of interest with respect to ratings are subject to extensive

federal regulation as described *infra*.  The ratings themselves are also protected speech within the

meaning of the First Amendment.  At its core, Plaintiff's action is designed to try to avoid these

federal statutory and constitutional law issues.

4.      Defendants are today filing notices of removal in each of the State Actions not

already in federal court,[2] to be followed promptly by a petition to the Judicial Panel on

Multidistrict Litigation to transfer all the actions for centralized pretrial proceedings.  The

exercise of federal jurisdiction will ensure that the important federal issues raised by this

---

[2]      Of the State Actions, sixteen of them are being removed: Arizona, Arkansas, Colorado, Connecticut, Delaware, the District of Columbia, Idaho, Illinois, Iowa, Maine, Missouri, North Carolina, Pennsylvania, South Carolina, Tennessee, and Washington.  A seventeenth case - brought by the State of Mississippi - is already in federal court.  Another case, brought by the State of California, has not been removed since it is related to a private case seeking overlapping relief that is already being litigated in California state court.  *See California Public Employees' Retirement System* v. *Moody's Investors Serv. Inc.*, No. CGC-09-490241 (Cal. Super. Ct. San Francisco Cnty. filed Jul. 9, 2009).

coordinated wave of litigation are adjudicated in a manner that takes into account the significant

federal regulatory and constitutional issues that are necessarily and directly implicated. The

availability of the multidistrict litigation transfer mechanism in federal court will ensure that the

cases are adjudicated in a uniform manner in protection of these interests.

     5.      S&P, the world's largest credit rating agency, is a Nationally Recognized

Statistical Rating Organization ("NRSRO") registered with the United States Securities and

Exchange Commission ("SEC"). Credit ratings are broadly published, forward-looking opinions

about the creditworthiness of issuers of debt, from sovereign countries such as the United States,

to corporations, to structured finance securities, such as mortgage-backed securities. NRSROs

and the ratings opinions that they issue are integral components of the broader federal financial

regulatory scheme. *See* Oversight of Credit Rating Agencies Registered as NRSROs, Credit

Rating Agency Reform Act of 2006 Release No. 34-55857, 72 Fed. Reg. 33,564, 33,564 (June

18, 2007) ("The term *nationally recognized statistical rating organization* ('NRSRO') is used in

federal and state statutes and regulations to confer regulatory benefits or prescribe requirements

based on credit ratings issued by credit rating agencies identified as NRSROs.") (emphasis in the

original), at http://www.gpo.gov/fdsys/granule/FR-2007-06-18/E7-11166/content-detail.html.

     6.      Given the national reach of ratings and their role in the financial markets, in 2006

Congress, acting pursuant to its Commerce Clause authority, enacted the Credit Rating Agency

Reform Act ("CRARA"), expressly finding that "credit rating agencies are of national

importance" and that safeguarding the integrity of the ratings process from conflicts of interest

was an important federal interest. Credit Rating Agency Reform Act of 2006, Pub. L. No. 109-

291, 120 Stat. 1327. Accordingly, CRARA included a variety of requirements related to the

independence of the ratings process and delegated to the SEC "exclusive authority to enforce the

provisions of this section in accordance with this chapter with respect to any [NRSRO], if such

[NRSRO] issues credit ratings in material contravention of those procedures relating to such

[NRSRO], including procedures relating to the prevention of misuse of nonpublic information

and *conflicts of interest*." 15 U.S.C. § 78o-7(c)(1) (2006) (emphasis added). In addition,

because credit ratings are statements of opinion protected by the First Amendment, Congress

further made clear that "neither the [SEC] nor any State (or political subdivision thereof) may

regulate the substance of credit ratings or the procedures and methodologies by which any

nationally recognized statistical rating organization determines credit ratings." *Id.* at § 78o-

7(c)(2). As the Chairman of the SEC at the time of CRARA's adoption, Christopher Cox, made

clear in testimony before Congress, CRARA "struck a sound balance" in its delegation of

"authority." *The Role and Impact of Credit Rating Agencies on the Subprime Credit Markets:

Hearing Before the S. Comm. on Banking, Housing, and Urban Affairs,* 110th Cong. 16 (2007)

(statement of Christopher Cox, Chairman, SEC).[3]

---

[3]      The State Actions themselves acknowledge that Defendants' activities are of national importance and are inextricably intertwined with federal regulation of the securities field. Indeed, fourteen of the State Actions filed to date allege that Defendants act as a "gatekeeper" because an investment grade rating is required by the SEC as a prerequisite to many institutional investors being permitted under SEC regulations to buy debt securities. These allegations are brought by Arizona, Arkansas, Colorado, Connecticut, Delaware, the District of Columbia, Idaho, Iowa, Mississippi, Missouri, North Carolina, South Carolina, Tennessee, and Washington. *See, e.g.,* Exhibit A attached hereto, Pl's (Idaho) Compl., Factual Allegations, ¶¶ 59-73. Eight of these fourteen State Actions further allege that this gatekeeper role causes Defendants' ratings to act as a "de facto regulatory license that expands the universe of potential buyers and investors

7.      This case, together with the other State Actions referenced above, threatens not only the "sound balance" established by Congress in CRARA, but the broader federal interest in the efficient operations of national markets for securities. Invoking Idaho's unfair trade practices law, Idaho Consumer Protection Act, Idaho Code §§ 48-601 *et seq.*, the State alleges that Defendants yielded to the pressures of an inherent conflict of interest and failed to act "independently" in issuing certain credit ratings. *See* Exhibit A attached hereto, Pl's Compl., Introduction ¶¶ 7-12. To address these purported conflict of interest issues, the Plaintiff and each of the other states seeks, among other relief, a permanent injunction designed to affect the way Defendant S&P conducts its ratings business. *See, e.g., id.* at ¶ 18, Prayer for Relief, ¶ 2. In other words, in these cases, the states seeks to regulate on a *de facto* national basis the very issue that Congress specifically assigned to the "exclusive authority" of the SEC as part of the "sound balance" embodied in CRARA.

8.      Thus, adjudicating the claims that each of these State Actions seeks to assert calls for courts to make judicial determinations concerning the scope of CRARA, the federal interests served by that regulatory scheme in the context of broader federal regulatory oversight of national securities markets, and the interplay among those federal regulatory schemes, state enforcement powers, the Commerce Clause and the First Amendment. As such, for Plaintiff to obtain "relief under state law [will necessarily require] resolution of a substantial question of

capable of purchasing a particular structured finance security." These allegations are brought by Arkansas, Connecticut, District of Columbia, Iowa, Missouri, North Carolina, South Carolina, and Tennessee. Of the four State Actions that do not make "gatekeeper" allegations, two of them (brought by Illinois and Maine) allege that the SEC requires certain institutional investors to invest only in those securities that obtained a certain rating level from an NRSRO.

federal law in dispute between the parties." *Hughes* v. *Chevron Phillips Chemical Co. LP*, 478

F. App'x 167, 170 (5th Cir. 2012) (internal citation and quotation marks omitted). Indeed,

federal courts have recognized as supporting jurisdiction "the added factor of an intricate federal

regulatory scheme . . . requiring some degree of national uniformity in interpretation." *West*

*Virginia* v. *Eli Lilly & Co.*, 476 F.Supp.2d 230, 234 (E.D.N.Y. 2007); *see also Grable*, 545 U.S.

at 313 (holding that the substantiality requirement is met where there is "a serious federal interest

in claiming the advantages thought to be inherent in a federal forum"). Here, interpretation of

the allocation of enforcement power between the states and the SEC under CRARA's framework

calls for national uniformity – it simply cannot be that different states across the country could

have different powers in relation to the federal regulatory scheme.

9.     Further, CRARA is a federal regulatory scheme that deals with securities, an area

of law in which strong federal interests and questions have been recognized. *See, e.g.,*

Memorandum Opinion & Order on Motion to Remand, *Reserve Management Co.* v. *Willkie Farr*

*& Gallagher LLP*, No. 11 Civ. 7045 (PGG) (S.D.N.Y. Sep. 25, 2012) (citing *D'Alessio* v. *New*

*York Stock Exch., Inc.*, 258 F.3d 93, 104 (2d Cir. 2001) and *New York City Health and Hospitals*

*Corp.* v. *Wellcare of New York, Inc.,* 769 F.Supp.2d 250, 257 (S.D.N.Y. 2011)).

10.     Nor is the attempted usurpation of federal regulatory power the only disputed

federal issue here. It is well-established that credit ratings, as opinions on matters of public

concern, are entitled to First Amendment protections. *See, e.g., Compuware Corp. v. Moody's*

*Investors Servs., Inc.*, 499 F.3d 520, 531 (6th Cir. 2007) (recognizing that the provision or

publication of a credit rating "without question involves activities protected by the First

Amendment"); *Jefferson Cnty. Sch. Dist No. R-1* v. *Moody's Investors Servs., Inc.*, 175 F.3d 848

(10th Cir. 1999). Yet, each of the State Actions, including this one, alleges violations of state

statutes that may permit the imposition of liability in the absence of proof by Plaintiffs that

Defendants lacked belief in the statements at the time they were made. Thus, in each case, the

court will need to decide whether the absence of a heightened "fault" requirement in these

statutes renders them unconstitutional as applied to Defendants' speech.[4]  Put another way, the

court will be required to consider the satisfaction of the First Amendment state-of-mind

requirement as a necessary element to a finding of liability under these statutes. *See*

*Compuware,* 499 F.3d at 525-26 (requiring plaintiff to show that defendant acted with actual

malice in order to impose liability for ratings opinions).  Moreover, with respect to each action's

request for injunctive relief, the court will have to construe not only the broad federal regulatory

issues discussed above, but also the boundaries of both the First Amendment as applied to ratings

---

[4]      The very statements about S&P's objectivity and independence that form the crux of the allegations here have already been held to be not actionable. *See Boca Raton Firefighters & Police Pension Fund* v. *Bahash*, No. 12-1776-cv, 2012 WL 6621391, at *3 (2d Cir. Dec. 20, 2012) (summary order).  Nor may plaintiffs indirectly challenge the ratings by attacking statements about objectivity and independence. *See Ohio Police & Fire Pension Fund* v. *Standard & Poor's Financial Services LLC*, 700 F.3d 829, 843 (6th Cir. 2012) (dismissing negligent misrepresentation claims for failure to state a claim where "[b]ased on publicly available information describing the [defendants'] business practices, the [plaintiffs] draw the inference that the Agencies did not believe in the correctness of their ratings").  Although many of the State Actions purport not to challenge the substance of the ratings themselves, the premise of any actual or potential injury to a state's consumers must be the assumption that incorrect ratings were both issued and relied upon by investors in making purchasing decisions.  As such, these actions inherently concern the substance of S&P's ratings opinions and the methodologies employed to arrive at them.

and CRARA's express prohibition on state regulation of the substance of ratings and rating

agency procedures and methodologies. *See* 15 U.S.C. § 78o-7(c)(2).

11.     The call for uniformity is amplified by the fact that this case does not exist in

isolation.  Instead, as noted, it is one of eighteen coordinated cases each brought on the same

basic theory and each seeking a permanent injunction over S&P's conduct.  Thus, S&P – and

indeed the "of national importance" rating agency industry as a whole – faces the prospect of

nearly twenty different injunctions based on different interpretations of the bounds and scope of

a federal regulatory scheme which, if implemented, would have the effect of making the most

restrictive element from each such injunction the *de facto* national standard on that issue.  As a

result, if the State Actions are successful, the carefully crafted federal regulatory framework put

in place by Congress would be in large measure replaced by a patchwork of state injunctions.

The visage of inconsistencies of constitutional magnitude across multiple jurisdictions further

heightens the federal interest in the outcome of these litigations.

12.     That the State Actions represent a coordinated effort is beyond doubt.  As

apparent from a review of the complaints listed in Appendix 1, not only is each of the cases

brought under the same basic theory – that S&P's representations about its "independence" and

"objectivity" were rendered false in light of the ratings it issued on certain structured finance

products – but the basic allegations themselves overlap among the actions, often word-for-word.

A comparison of the allegations across each of the State Actions reveals over 100 allegations that

are found in substantially similar form in more than three-fourths of the complaints.  Indeed,

over ninety percent of the factual allegation paragraphs in the State of Idaho's Complaint contain

allegations that are identical or substantially similar to those appearing in one or more of the other complaints.

13.     In addition to the commonality of the complaints' allegations, the filing of these actions was the result of a cohesive, coordinated effort by a group of state Attorneys General from around the country. *See* Appendix 2 (compiling press releases about the coordinated effort). The majority of these actions were filed on the same day. During a press conference held in connection with the February 5 filings, Connecticut's Attorney General George Jepsen cited "the hundreds of hours developing the case in Connecticut," including "working more and more with state attorneys general from around the country to develop the multistate litigation." Transcript of Press Conference with Attorney General Eric Holder, Associate Attorney General Tony West, Deputy Assistant Attorney General Stuart Delery, Announcement of a Major Financial Fraud Enforcement Action, Washington, D.C. (Feb. 5, 2013), *in* FED. NEWS SERV. (Feb. 5, 2013), at 7. Attorney General Jepsen further alluded to coordination among the states over the relief sought in the various actions. *Id.* This level of cooperation, while not inappropriate, bears directly on the impact of the cases on well-established federal interests.

14.     Moreover, exercise of federal jurisdiction here is entirely "consistent with congressional judgment about the sound division of labor between state and federal courts." *Grable*, 545 U.S. at 313. Even absent the necessity of uniformity in decision-making on the federal issues in dispute here, it would grossly disturb the balance of state and federal judicial power to permit state courts to regulate (through, for example, the issuance of injunctions) the conduct of NRSROs on an effectively national basis. Furthermore, there is no risk that the

decision to exercise federal jurisdiction in these cases would trigger a flood of other cases

moving from state to federal courts since the State Actions present a unique set of circumstances.

      15.     In short, a federal forum, with the attendant opportunity to consolidate these

coordinated actions into one multi-district litigation, provides the only efficient mechanism for

adjudicating what is unquestionably a nationwide and federal dispute involving important

questions of federal law.

### PROCEDURAL REQUIREMENTS

      16.     Plaintiff commenced the action in the District Court of the Fourth Judicial District

of Idaho, Ada County, on February 5, 2013, entitled *State of Idaho, through Attorney General*

*Lawrence Wasden v. The McGraw-Hill Companies, Inc. and Standard & Poor's Financial*

*Services, LLC*, Case No CV OC 1302154.  The Summons and Complaint were served on

Defendants through an authorized Agent for Service on February 19, 2013.  Copies of all

process, pleadings, and orders entered in the state court action are attached hereto as **Exhibit A**

pursuant to 28 U.S.C. § 1446(a) and Rule 81.1(a)(1) of the Local Civil Rules for the United

States District Court for the District of Idaho.  Removal is thus timely because Defendants filed

this Notice of Removal within thirty (30) days of their receipt of a copy of the Summons and

Complaint in this matter.  *See* 28 U.S.C. § 1446(b).

      17.     No further proceedings have occurred in the state action, and Defendants have

neither waived nor prejudiced their right to remove this action to this Court.

18.     This action is removable to this Court pursuant to 28 U.S.C. § 1441(a) in that the United States District Court for the District of Idaho embraces the place where the state action was pending in Ada County, Idaho.

19.     Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly serve a copy of this Notice of Removal on Plaintiff's counsel and file with the District Court of the Fourth Judicial District of Idaho, Ada County, a Notice of Filing of this Notice of Removal.

WHEREFORE, this action should proceed in the United States District Court for the District of Idaho as an action properly removed thereto.

DATED:  March 6, 2013.

PERKINS COIE LLP

By: _Christine Salmi_
    Richard C. Boardman, ISB No. 2922
    Christine M. Salmi, ISB No. 5626

*Attorneys for Defendants*
*The McGraw-Hill Companies, Inc. and*
*Standard & Poor's Financial Services LLC*

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on March 6, 2013, I caused a true and correct copy of the foregoing to be forwarded with all required charges prepaid, by the method(s) indicated below, in accordance with the Federal Rules of Civil Procedure, to the following person(s):

Jane E. Hochberg
Oscar S. Klaas
Deputy Attorneys General
Consumer Protection Division
954 W. Jefferson, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Fax: (208) 334-4151
jane.hochberg@ag.idaho.gov
oscar.klaas@ag.idaho.gov

| Hand Delivery | _____ |
| U.S. Mail | ___x___ |
| Facsimile | _____ |
| Overnight Mail | _____ |
| Electronic | _____ |

*Attorneys for Plaintiff State of Idaho*

_Christine Salmi_

Christine M. Salmi, ISB No. 5626